```
                 IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILADELPHIA HOUSING            :    CIVIL ACTION
AUTHORITY,                      :    NO. 08-1192
                                :
     Plaintiff,                 :
                                :
     v.                         :
                                :
                                :
CEDARCRESTONE, INC.,            :
                                :
     Defendant.                 :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                JUNE 25, 2008

I.   BACKGROUND

Plaintiff Philadelphia Housing Authority ("PHA") entered into a contract with Defendant CedarCrestone, Inc., pursuant to which CedarCrestone would upgrade PHA's PeopleSoft software system from version 8.8 to 8.9, and implement various other system improvements, within nine months. The contract allegedly required deliverables and status reports from CedarCrestone while the upgrade was ongoing. By subsequent agreement, the parties allegedly modified the contract so that the PeopleSoft software would be upgraded to version 9.0.

PHA alleges that CedarCrestone failed to complete the upgrade, implement the system improvements, and provide the required deliverables, all in breach of the contract. PHA brings claims for breach of contract or, in the alternative, breach of implied contract.

CedarCrestone, in turn, brings a counterclaim for breach of contract or, in the alternative, quantum meruit, seeking payment of sums allegedly due under the contract, plus interest. Before the Court is PHA's motion to dismiss the counterclaim in part. For the following reasons, the motion will be granted.

II. MOTION TO DISMISS

PHA makes two arguments in its motion to dismiss: 1) CedarCrestone's claim for quantum meruit relief is foreclosed because the relevant transaction is governed by an express contract; and 2) CedarCrestone's request for interest is precluded by the language of the contract.

    A.    Legal Standard

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted,[1] the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the

---

[1] The motion is styled a Motion to Dismiss the Counterclaim for Quantum Meruit and to Strike the Request for Interest. However, a motion to strike under Federal Rule of Civil Procedure 12(f) is proper when a pleading asserts "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because PHA seeks to "strike" the request for interest because it is allegedly precluded by the contract, the Court will construe the "motion to strike" as a motion to dismiss the counterclaim in part.

light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 216 (3d Cir. 2007) (quotation omitted). The Court need not, however, "credit either bald assertions or legal conclusions in a complaint when deciding a motion to dismiss." Id. (quotation omitted). The "'[f]actual allegations must be enough to raise the right to relief above the speculative level.'" Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 & n.3 (2007)). Viewing the allegations as such, the Court must dismiss the complaint if it fails to state a claim upon which relief can be granted.

    B.    Quantum Meruit Claim

Under Pennsylvania law,[2] "'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.'" Benefit Tr. Life Ins. Co. v. Union Nat'l Bank of Pittsburgh, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969)); Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) ("Where an express contract governs the

---

[2] The parties agree that Pennsylvania law applies. See Compl. Ex. A [hereinafter "Services Contract"] ¶ 4 ("This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania . . . .").

-3-

relationship of the parties, a party's recovery is limited to the measure provided in the express contract; and where the contract 'fixes the value of services involved,' there can be no recovery under a quantum meruit theory." (quoting Murphy v. Haws & Burke, 344 A.2d 534, 546 (Pa. Super. Ct. 1975))). Thus, "[d]ismissal of an unjust enrichment claim is appropriate upon a motion to dismiss when the relationship between parties is founded on a written instrument." Harold ex rel. Harold v. McGann, 406 F. Supp. 2d 562, 579 (E.D. Pa. 2005).[3]

This does not mean, however, that the existence of an express contract between the parties will always preclude a quantum meruit claim. Rather, the Court must inquire at the motion to dismiss stage whether there is any dispute as to the existence of the express contract, and whether the scope of the contract includes the transaction that is the basis for the quantum meruit claim. As Judge Padova stated in a similar case:

> According to [Rule 12(b)(6)], to dismiss [the] quantum meruit claim I must first find that the contracts entered by the parties . . . encompass the work that is the subject of [the] claim. In the language of Schott, I must find that the relationship between [the parties] regarding the subject of [the] claim is founded on the contracts . . . [t]aking the facts pled in [the] amended complaint as true and resolving all doubts in favor of [the non-movant] . . . .

---

[3] "Quantum meruit is a quasi-contractual remedy based upon the equitable doctrine of unjust enrichment. Thus the terms quantum meruit and unjust enrichment often are used interchangeably." HCB Contractors v. Rouse & Assocs., Inc., No. 91-CV-5350, 1992 WL 176142, at *12 n.13 (E.D. Pa. July 13, 1992).

HCB Contractors v. Rouse & Assocs., Inc., No. 91-5350, 1992 WL 176142, at *7 (E.D. Pa. July 13, 1992).  Compare J.A. & W.A. Hess, Inc. v. Hazle Twp., 400 A.2d 1277, 1279-80 (Pa. 1979) (motion to dismiss denied because conduct that was basis for claim did not fall within scope of contract), with Mid-Atl. Constr. Inc. v. Stone & Weber Constr., Inc., No. 03-6125, 2005 U.S. Dist. LEXIS 26624, at *7 (E.D. Pa. Nov. 3, 2005) ("Mid-Atlantic filed suit for breach of contract and Stone & Weber has not raised as a defense that the contract is voidable . . . . Therefore, the parties' fate rises and falls within the four corners of the agreement.").

The same analysis applies even if, as here, breach of contract and quantum meruit claims are raised in the alternative. In Promark Realty Group, Inc. v. B&W Associates, No. 02-1089, 2002 WL 862566 (E.D. Pa. May 1, 2002), it was undisputed that the parties' relationship was governed by an express contract.  Id. at *4.  On a motion to dismiss, Plaintiff sought "to save [the quantum meruit] claim by arguing that it is permitted to plead unjust enrichment as an alternative to its contract-based claim." Id.  The Court dismissed the claim, however, because, "as pled in the complaint, all the benefits Plaintiff could possibly have conferred on [Defendant] . . . were to be provided pursuant to the contract between the parties."  Id.

In this case, the relevant allegations of the

counterclaim are the following:

>   5.  On July 20, 2006, CedarCrestone and PHA entered into a contract pursuant to which CedarCrestone would provide consulting services to PHA in connection with PHA's upgrade of Oracle's PeopleSoft software.
>
>   . . . .
>
>   7.  CedarCrestone provided services pursuant to the contract and rendered invoices for services rendered.
>
>   8.  PHA has not paid CedarCrestone on invoices totaling $589,625 for time and materials under the July 20, 2006 contract and has withheld payment of $78,000 due CedarCrestone on another contract as to which there is no dispute for a total due of $667,625.
>
>   9.  CedarCrestone is entitled to judgment in the amount of $667,625.
>
>   10  In the alternative, CedarCrestone is entitled to payment of $667,625 in quantum meruit.

Ans. & Countercl. (doc. no. 7) ¶¶ 5, 7-10 (emphases added).  As explained below, the above allegations suggest that dismissal of the quantum meruit portion of the counterclaim is warranted.

>   1.  The July 20, 2006 contract

The counterclaim alleges that CedarCrestone provided services "pursuant to the [July 20, 2006] contract," and that it was owed monies "under the July 20, 2006 contract."  Moreover, there is no dispute as to the existence of the July 20, 2006 contract.  Therefore, because the "contracts entered by the parties . . . encompass the work that is the subject of [the

quantum meruit] claim," the quantum meruit portion of the counterclaim should be dismissed.  HCB, 1992 WL 176142, at *7.

CedarCrestone now asserts that, although the existence of the July 20, 2006 contract is not disputed, the scope of the contract is disputed.  Specifically, subsequent to the execution of the July 20, 2006 contract, which required a system upgrade from version 8.8 to 8.9, an agreement was allegedly reached modifying the contract to require an upgrade from version 8.8 to 9.0.  See Compl. ¶ 12; Ans. ¶ 12.  However, the contract states that "[n]o changes, additions or deletions shall be made to the contract without prior written consent of Contract officer.  All amendments must be signed by both parties."  Services Contract at D-7, ¶ 1.  CedarCrestone now argues that these modification procedures were not complied with, and thus that the services performed pursuant to the subsequent agreement (upgrade to 9.0) are not within the scope of the contract (upgrade to 8.9).

Unfortunately for CedarCrestone, it neglected to place any of these new allegations in the counterclaim.  Even construed in a favorable light, the counterclaim plainly says that CedarCrestone is owed payments "under" the July 20, 2006 contract for services performed "pursuant to" that contract.  Thus, the motion to dismiss the claim seeking payments under the July 20, 2006 contract will be granted.

2. <u>Payment under "another" contract</u>

The counterclaim also alleges that PHA has "withheld payment of $78,000 due CedarCrestone on another contract as to which there is no dispute." Ans. & Countercl. ¶ 8.  In its reply, PHA argues that the allegation concerning the "other" contract is not sufficiently particular to put it on notice of the specific contract to which the allegation refers, and thus that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the averment.  <u>See</u> Reply (doc. no. 17) ¶ 8.

Putting aside PHA's argument that the counterclaim lacks the requisite specificity, at the motion to dismiss stage, the Court is required to accept the allegations of the counterclaim as true.  <u>See</u> <u>DeBenedictis</u>, 492 F.3d at 216.  Here, CedarCrestone alleges that there is "no dispute" as to the "other" contract.  Moreover, the $78,000 payment sought in <u>quantum meruit</u> is alleged to be due "on" that contract.  Therefore, for the reasons stated above, the motion to dismiss the portion of the counterclaim seeking <u>quantum meruit</u> relief for payments under the "other" contract will be granted as well.

3. <u>Oral motion for leave to amend</u>

At the hearing on the instant motion, counsel for CedarCrestone candidly conceded that the counterclaim was devoid

of any allegations that CedarCrestone's services were performed outside the scope of the contract, as is now argued. Counsel for CedarCrestone thus requested leave to amend the counterclaim at the conclusion of oral argument.

Accordingly, the motion to dismiss the counterclaim in part will be granted with leave for CedarCrestone to file an amended counterclaim. Leave to amend will be granted only to the extent that CedarCrestone may amend the portion of the counterclaim seeking <u>quantum meruit</u> relief to include allegations concerning the services it allegedly performed outside the scope of the contract.[4]

### C.   Request for Interest

The counterclaim seeks "judgment in [CedarCrestone's] favor in the amount of $667,625 plus interest." Ans. & Countercl. 9. PHA argues that the counterclaim's request for interest should be stricken in light of the contract's language.[5] PHA points to the following language of the contract: "Notwithstanding state law to the contrary, no interest shall be payable to the contractor from the PHA for delayed progress or

---

[4] PHA may, of course, move to dismiss the amended counterclaim once it is filed.

[5] At the hearing on the motion, CedarCrestone clarified that the counterclaim seeks both pre- and post-judgment interest. PHA in turn clarified that its position is that the contract forecloses any award of interest, whether pre- or post-judgment.

final payment." Services Contract ¶ 21.

CedarCrestone argues that the contract does not preclude an award of interest because: 1) its language is ambiguous, 2) pre-judgment interest is an equitable remedy and thus cannot be waived by contract, and 3) post-judgment interest is governed by Pennsylvania statute and thus cannot be waived by contract.

### 1. Ambiguity

The contract language is not ambiguous. Rather, it plainly prohibits the payment of "interest," stating that interest "shall not be payable" for "delayed progress or final payment." This language leaves no doubt that the parties intended to preclude the payment of interest for payments not timely made under the contract.

Here, the counterclaim seeks to recover the very measure of relief prohibited by the contract language, that is, interest on payments not timely made under the contract.[6]

---

[6] In <u>Carrothers Construction Co. v. City of Dallas</u>, 95-10723, 1996 WL 625433 (5th Cir. Oct. 11, 1996) (unpublished), the Fifth Circuit analyzed a similar contract provision, stating that "no contractor of the City of Dallas shall be entitled to interest on any delayed, disputed, or delinquent payment." <u>Id.</u> at *6. The Court interpreted this language to "limit a contractor's right to recover against the City . . . [if it] failed to pay timely for the contractor's goods or services." <u>Id.</u> The court held, however, that the right to interest had not been waived because "[t]he instant case does not involve whether the City timely paid for Carrothers's work" and because the suit

2.  Pre-Judgment Interest

CedarCrestone argues that pre-judgment interest is an equitable remedy, and thus that the Court retains discretion to award interest notwithstanding any contractual provision.

It is true that Pennsylvania courts have taken "an equitable approach in determining interest as an element of damages." In re Est. of Braun, 650 A.2d 73, 78 (Pa. Super. Ct. 1994); Daset Mining Corp. v. Indus. Fuels Corp., 473 A.2d 584, 595 (Pa. Super. Ct. 1984). An equitable approach, however, is only necessary when the parties have not agreed by contract on the amount of interest to be paid. "'[I]f the parties have agreed on the payment of interest, it is payable not as damages but pursuant to a contract duty that is enforceable.'" Somerset, 685 A.2d at 148 (emphasis omitted) (quoting Restatement (Second) of Contracts § 354 cmt. a); Restatement of Contracts § 337 (providing for interest recoverable "in the discretion of the court, if justice requires it" only "[i]f the parties have not by contract determined otherwise").[7]

---

"sought damages beyond the contract amounts." Id.  In this case, the gravamen of CedarCrestone's counterclaim, as discussed above, is that PHA has not paid amounts due under the contract, and no damages are sought other than the contract amounts.

[7]     The Pennsylvania Supreme Court adopted Restatement of Contracts § 337 in Penneys v. Pa. R.R. Co., 183 A.2d 544 (Pa. 1962).  See Somerset, 685 A.2d at 202.  The superior court subsequently adopted the successor to that section, Restatement

Here, CedarCrestone, a sophisticated contracting party, has, of its own accord, made an agreement to waive its right to pre-judgment interest. Therefore, there is no reason in equity to make an award of pre-judgment interest, as the parties have expressly agreed by contract that interest shall be waived. Under such circumstances, it is not the role of the Court to question the wisdom of the parties' agreement; rather, the Court must give effect to the clearly expressed intent of the parties. Somerset, 685 A.2d at 149 ("The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent.").

### 3.   Post-judgment interest

CedarCrestone argues that parties cannot agree by contract to waive the right to post-judgment interest because that right is governed by Pennsylvania statute.

It is certainly true that the right to post-judgment interest is provided for by statute:

> Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa. Cons. Stat. § 8101; see also 42 P.S. § 202 ("Reference in any law or document enacted or executed heretofore or hereafter

---

(Second) of Contracts § 354.  Id.

-12-

to 'legal rate of interest' and reference in any document to an obligation to pay a sum of money 'with interest' without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.").

It is equally well-established, however, that, despite the mandatory language of the statute, parties can vary the statutory interest rate by contract. See Braun, 650 A.2d at 78 (noting that the "specific intent of the parties prevails over the statutory rate"); Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 591 (Pa. Super. Ct. 2003) ("[T]he statutory rate of interest in the Commonwealth is fixed at 6%, but parties to a contract may agree to a higher rate."); cf. Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004) (noting that a party can "agree on a lower rate" of post-judgment interest than the rate provided under federal statute).[8]

---

[8] In Westinghouse, the Second Circuit interpreted the federal post-judgment interest statute, 28 U.S.C. § 1961. Like the Pennsylvania statute, the federal statute, "is silent on the point, neither expressly permitting nor ruling out deviations by private agreement." Westinghouse, 371 F.3d at 101. Also like the Pennsylvania statute, the federal statute "employs mandatory language," but the Court "believe[s] this is aimed mainly at precluding district courts from exercising discretion over the rate of interest or adopting an interest rate set by arbitrators, not at limiting the ability of private parties to set their own rates through contract." Id. Rather, parties were free to set "their own post-judgment interest rates through private agreements, so long as those rates do not violate state usury and other applicable laws." Id. Due to the similarity between the Pennsylvania and federal post-judgment interest statutes, the analogy to Westinghouse is an apt one here. As with an agreement to a lower interest rate, an outright waiver of the right to

It follows from the logic of the Pennsylvania decisions that if a party can freely agree to vary the statutory interest rate, it can also agree to forego the statutory right to interest completely.  Cf. Westinghouse, 371 F.3d at 102 ("To the extent they [sic] agree on a lower rate [or an outright waiver], the successful plaintiff has essentially waived part of the benefit that the statute was intended to confer, and beneficiaries of a statutory provision generally may do this, absent congressional language to the contrary.").

Therefore, CedarCrestone's argument that § 8101 trumps the parties' agreement as to interest is incorrect.  The parties are free to choose, notwithstanding the mandatory language of the statute, to waive the statutory right to post-judgment interest.[9]

---

interest would not violate any usury law, or any other Pennsylvania law of which the Court is aware.

[9] Without formally asserting it as an argument in its moving papers, at the hearing on the instant motion CedarCrestone obliquely raised the issue of whether a waiver of post-judgment interest violates some public policy.  The Court notes, with some hesitation, that a party's waiver of its statutory right to post-judgment interest is not contrary to a clearly expressed public policy.  As explained by the Pennsylvania Supreme Court:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.  As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy. . . .  Only dominant public policy would justify such action.  In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of

III. CONCLUSION

Plaintiff's motion to dismiss the counterclaim in part (doc. no. 16) will be granted.  The portion of the counterclaim seeking quantum meruit relief will be dismissed, and the

---

> obvious ethical or moral standards, the Court should
> not assume to declare contracts . . . contrary to
> public policy.  The courts must be content to await
> legislative action.  It is only when a given policy is
> so obviously for or against the public health, safety,
> morals or welfare that there is a virtual unanimity of
> opinion in regard to it, that a court may constitute
> itself the voice of the community in so declaring [that
> the contract is against public policy].

Progressive N. Ins. Co. v. Schneck, 813 A.2d 828, 831 (Pa. 2002) (quotation omitted).  No decision pointed to by the parties, or known to this Court, has clearly expressed a public policy to which an outright waiver of post-judgment interest is "obviously" contrary.  Moreover, such a waiver does not result in a violation of any obvious ethical or moral standard.

Pennsylvania courts have explained that "[t]he purpose of post-judgment interest is to compensate a successful plaintiff for being deprived of compensation for his or her loss during the time between ascertainment of the damage and payment by the defendant."  Hutchison ex rel. Hutchison v. Luddy, 946 A.2d 744, 752 (Pa. Super. Ct. 2008).  Therefore, if the sole beneficiary of the post-judgment interest statute is the litigant, it is sensible that a sophisticated litigant who waives its statutory right should be permitted to do so.

It nonetheless occurs to the Court that, in addition to the protection of the individual litigant, post-judgment interest protects the integrity of the Court's judgment.  In other words, if the losing party can delay payment of the judgment with no consequence, the judgment loses much of its force.  However, because neither the Pennsylvania legislature nor the Pennsylvania Supreme Court has clearly expressed this policy, it remains a "general consideration[ ] of supposed public interest," and the Court must, in this diversity case, "be content to await legislative action."  Progressive, 813 A.2d at 831.

counterclaim's request for interest will be stricken.  The remaining portions of the counterclaim, alleging breach of contract, are unaffected, as are Plaintiff's claims.

Defendant's oral motion to amend the counterclaim will be granted.  Leave to amend will be granted only to the extent that Defendant may amend the portion of the counterclaim seeking <u>quantum meruit</u> relief to include allegations concerning its alleged performance of services outside the scope of the contract.  An appropriate order follows.

```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILADELPHIA HOUSING           :   CIVIL ACTION
AUTHORITY,                     :   NO. 08-1192
                               :
     Plaintiff,                :
                               :
     v.                        :
                               :
                               :
CEDARCRESTONE, INC.,           :
                               :
     Defendant.                :
```

**O R D E R**

**AND NOW**, this **25th** day of **June, 2008,** for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Plaintiff's motion to dismiss the counterclaim in part (doc. no. 16) is **GRANTED**.  The portion of the counterclaim seeking quantum meruit relief is dismissed.  The counterclaim's request for interest is stricken.

Defendant's oral motion to amend the counterclaim is **GRANTED**.  Leave to amend is granted only to the extent that Defendant may amend the portion of the counterclaim seeking quantum meruit relief to include allegations concerning its alleged performance of services outside the scope of the contract.

**IT IS FURTHER ORDERED** that, as discussed at the June 10, 2008 initial pretrial conference, the parties shall submit a supplemental Rule 26(f) report and a proposed protective order by **July 10, 2008.**  The Court will issue an order reconvening the

initial pretrial conference via telephone upon reviewing the supplemental submissions.

      **AND IT IS SO ORDERED.**

                                      **S/Eduardo C. Robreno**
                                      **EDUARDO C. ROBRENO, J.**